IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

FRANCISCO NUECI-PEÑA

Plaintiff

vs

UNITED STATES OF AMERICA

Defendant

CIVIL 14-1480CCC
Related Cr. 07-0088-01(CCC)

## OPINION AND ORDER

Before the Court is a pro se Motion pursuant to 28 U.S.C. § 2255 filed by petitioner Francisco Nueci-Peña (hereinafter "Petitioner" or "Nueci-Peña") (**d.e. 1**), a supporting Memorandum and the government's response (d.e. 6). For the reasons stated below, said Motion and Supplemental Petition and the request for an evidentiary hearing are DENIED.

## I.    BACKGROUND

Nueci-Peña was charged along with five (5) other co-defendants in a two-count Superseding Indictment (d.e. 39 in Cr. 07-0088CCC).  He was sentenced to twenty four years of imprisonment after being convicted by a jury of possession with the intent to distribute over 1,140 pounds of cocaine and heroin while on board a vessel in violation of the Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.C. § 70501, et. seq.  On October 5, 2010, Mr. Nueci-Peña filed an appeal arguing that Congress had no authority under the U.S. Constitution to criminalize drug trafficking on board a vessel in international waters without requiring a nexus between the conduct and the United States and that it was a violation of his Sixth Amendment right to confrontation for the district court to admit certifications as evidence in the determination of jurisdiction under the MDLEA.

CIVIL 14-1480CCC                          2
Related Cr. 07-0088-01(CCC)

On March 19, 2013, the First Circuit Court of Appeals affirmed his conviction, United States v. Nueci-Peña, 711 F3d. 191 (1st Cir. 2013).

## II.    DISCUSSION

In his § 2255 Petition and Memorandum, Nueci-Peña raised the following allegations of ineffective assistance of counsel:

(1)    Failing to object when the district court violated his Sixth Amendment Right to Public Trial and FRCP 10.

(2)    Failing to properly advise petitioner to accept the plea agreement offer.

Nueci-Peña also alleged that the sentencing judge erred in increasing the mandatory minimum in violation of his Sixth Amendment Right.

### A.    Ineffective Assistance of Counsel Standard

The standard for an ineffective assistance of counsel claim is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Strickland v. Washington, 466 U.S. 668 (1984); Lema v. United States, 987 F.2d 48 (1st Cir. 1993). In order to succeed in a claim of ineffective assistance of counsel Nueci-Peña must show both incompetence and prejudice: (1) petitioner must show that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Argencourt v. United States, 78 F.3d 14 (1st Cir. 1996), Darden v. Wainwright, 477 U.S. 168 (1986), Lockhart v. Fretwell, 506 U.S. 364 (1993).

CIVIL 14-1480CCC                 3
Related Cr. 07-0088-01(CCC)

Petitioner bears a "very heavy burden" in his attempt to have his sentence vacated premised on an ineffective assistance of counsel claim. Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996); Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993). Under the Strickland standard, "only where, given facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." United States v. Rodriguez, 675 F.3d 48, 56 (1st Cir. 2012), quoting Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010), which in turn quotes Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006).

In order to successfully satisfy the first prong of the Strickland test petitioner must show that "in light of all the circumstances, the identified acts or omissions [allegedly made by his counsel] were outside the wide range of professionally competent assistance." Tejeda v. Dubois, 142 F.3d 18, 22 (1st Cir. 1998) (citing Strickland, 466 U.S. at 690). Petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996) (citing Strickland at 689). Finally, a court must review counsel's actions deferentially, and should make every effort "to eliminate the distorting effects of hindsight." Argencourt v. United States, 78 F.3d at 16 (citing Strickland 466 U.S. at 689).

The second prong of the Strickland test, the element of prejudice, also sets the bar high. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Argencourt v. United States, 78 F.3d at 16 (citing Strickland, 466 U.S. at 691). Petitioner must "prove that there is a

CIVIL 14-1480CCC                    4
Related Cr. 07-0088-01(CCC)

reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different." <u>Knight</u> v. <u>United States</u>, 37 F.3d 769, 774 (1st Cir.1994) (citing <u>Strickland</u>, 466 U.S. at 687).

This means that if petitioner is successful in showing deficiencies in his counsel's representation, he must then conclusively establish that those deficiencies led to a real prejudice against him in the criminal proceedings. <u>Id</u>. at 694.  Nueci-Peña has failed to meet the <u>Strickland</u> standard in all of his claims.

> **B.    Ineffective Assistance of Counsel - Defense counsel was ineffective for failing to object when the district court judge violated the public and the press qualified First Amendment Right to attend criminal trials, Petitioner's Sixth Amendment Right to Public Trial and FRCP 10**.

In support of his first allegation of ineffective assistance of counsel, Petitioner states:

1.    His arraignment was held in a robing room rather than in open court which would be a violation of his Sixth Amendment right to public hearings;[1]

2.    During his trial the Court held the jury voir dire at sidebar and closed the same to the public;

3.    The Court held proceedings as to a juror's conduct in the robing room thus not allowing the public nor defendant to be present; and

4.    The Court excluded from the courtroom, during trial, Nueci-Peña's sister (d.e. 1-1).

---

[1]Petitioner further asserts that the Arraignment Hearing is not entered into his criminal case docket (d.e. 1-1 at p. 3).

CIVIL 14-1480CCC                    5
Related Cr. 07-0088-01(CCC)

The Court has reviewed both the criminal case docket and the trial transcript and concludes that his arguments are unfounded.

On March 8, 2007, Nueci-Peña's arraignment was held before Magistrate-Judge McGiverin (d.e. 20 in Cr. 07-0088CCC).  The Minutes reflect that during the proceedings, copy of the indictment was given to defendant who waived the reading of said indictment in open court, that he was assisted by a court interpreter, and he entered a plea of guilty to both counts.  The claim that his arraignment was held in a robing room rather than in open court and that this proceeding was not on the record is contradicted by the case file.  See docket entry 20.    Following the arraignment that same day, U.S. Magistrate-Judge McGiverin issued a Detention Order (d.e. 26 in Cr. 07-0088CCC).

On April 19, 2007, Nueci-Peña was again arraigned due to the filing of a Superseding Indictment (d.e. 41). The record again reflects that the arraignment was held in open court, not in a robing room, Petitioner was present, assisted by the court interpreter and entered a plea of not guilty.  In the initial arraignment on the original indictment and the subsequent arraignment on the superseding indictment, the docket reflects at docket entries 20 and 41 that an audio recording was made of each of these proceedings.  See indications as to CR FTR.  Petitioner's first claim related to the violations of his right to a public trial is not supported by the record.

Nueci-Peña's second allegation in support of a violation of his Sixth Amendment right to a public trial relates to jury selection.  He claims that the voir dire conducted during jury selection was done at sidebar without his participation.

CIVIL 14-1480CCC                              6
Related Cr. 07-0088-01(CCC)

The failure to hold a public trial is a structural error that "infects the entire trial process." United States v. Negron-Sostre, 2015 WL 3898794, 2 (1st Cir. 2015) (quoting Owens v. United States, 483 F.3d 48, 64 (1st Cir. 2007). The Supreme Court has unequivocally established that "the Sixth Amendment right to a public trial extends to jury voir dire process." Presley v. Georgia, 558 U.S. 209, 213 (2010); United States v. Agosto-Vega, 617 F.3d 541, 546 (1st Cir. 2010). The reasoning for this is that "jury selection is the primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice . . . or predisposition about the defendant's culpability . . ." Owens, 483 F.3d at 63 (quoting Gomez v. United States, 490 U.S. 858, 873 (1989)).

The record clearly reflects that the general and special voir dire of the jury were conducted in open court. On June 11, 2010, Nueci-Peña's trial began with the presence of a Courtroom Deputy, Court Reporter and a Court Interpreter. (d.e. 394 in Cr. 07-0088CCC). The courtroom Minutes for the first day of jury trial read:

> During afternoon session and in **open court**, voir dire conducted. Jury impaneled and sworn in. Out of the presence of the jury, the Court inquired from defendant Nueci-Peña as to not holding trial session from Wednesday to Friday due to his attorney's attendance to a seminar. Defendant expressed no objection.[2]

d.e. 394 in Cr. 07-0088CCC (emphasis ours).

The Court has also reviewed the trial transcript of June 11, 2010 when court opened for the first time. The following are relevant excerpts of these

---

[2]The record indicates that Petitioner was present at all times. The morning session of the first day trial, June 11, 2010, was consumed by the parties discussing possible pleas of guilty as to co-defendant Mitchell-Hunter thus a recess was granted by the court and jury selection did not begin until the afternoon session (d.e. 394 in Cr. 07-0088CCC).

CIVIL 14-1480CCC                    7
Related Cr. 07-0088-01(CCC)

proceedings taken from the trial transcript of June 11, 2010 filed on May 1,

2011 (d.e. 448 in Cr. 07-0088CCC).

> THE CLERK: Criminal No. 07-88, United States of America versus Francisco Nueci Peña and Javier Mitchell Hunter for jury selection. On behalf of the Government, Assistant U.S. Attorneys Justin Martin and Carlos Cardona. On behalf of the Defendants, attorneys Rafael Andrade and Rachel Brill. Defendants are present in court and they are being assisted by the official court interpreter.

Trial Transcript of June 11, 2010, at p. 2, lines 1-9.

After a brief sidebar with attorney Brill for co-defendant Javier

Mitchell-Hunter, the proceedings continued in open court:

> THE COURT: Members of the jury, I'm going to recess for ten minutes, there is a procedural matter that I have to tend to and I'll be back shortly. I'm Judge Cerezo, I will be presiding over this trial and we will be selecting the jury soon. I don't want to keep you waiting much longer.

Trial Transcript of June 11, 2010, at p. 3, lines 9-14.

There is a recess and trial continued at 1:55 PM at which time the case

was called to start jury selection:

> The Court: Please call the case.

> The Clerk: Criminal No. 07-88, United States of America versus Francisco Nueci Peña for jury selection. On behalf of the Government, Assistant U.S. Attorneys Justin Martin and Carlos Cardona. On behalf of the Defendant, attorney Rafael Andrade. Defendant is present in court and he is being assisted by the official court interpreter.

> THE COURT: Are the parties ready to proceed; the United States?

> MR. MARTIN: Yes, Your Honor.

> THE COURT: Defendant.

> MR. ANDRADE: Yes, Your Honor.

Trial Transcript of June 11, 2010, at p.4 line 20 through p. 5, line 7.

(The following proceedings were had in open court:)

CIVIL 14-1480CCC                    8
Related Cr. 07-0088-01(CCC)

> THE COURT: Good afternoon again, ladies and gentlemen of the jury panel. Again, I apologize for the delay. We were in court regarding the other unrelated case until 1, so that has been the reason for the delay.
>
> MR. ANDRADE: Judge, if I may, I'm having technical difficulties.
>
> THE COURT: Let's wait. Let's check the headphone.  All right?
>
> MR. ANDRADE: Yes, ma'am.
>
> THE COURT: The record will show that Mr. Nueci is being assisted by a certified court interpreter.

Trial Transcript of June 11, 2010, p. 7, lines 11-22.

After the jury was instructed on the charges of the indictment, burden of proof and presumption of innocence (pages 8 through 11), the Courtroom Deputy took the oath of the jury panel whereupon the following took place:

> THE COURT: The courtroom deputy shall take the oath of the entire jury panel.
>
> THE CLERK: Will all jurors summoned to appear today please rise. Please raise your right hand.
>
> (Whereupon the potential jurors were duly sworn.)
>
> THE COURT: At this time I ask the Defendant, Mr. Francisco Nueci Peña, to please stand, face the prospective jurors and identify yourself to them. Please turn around, Mr. Peña, state your name to the jurors.
>
> THE DEFENDANT: My name is Francisco Nueci Peña.
> THE COURT: Thank you, you may be seated.

Trial Transcript of June 11, 2010, p. 11, line 20 through p. 12, line 5.

> THE COURT: I will ask the attorney for Mr. Nueci Peña to stand and identify yourself to the jurors.
>
> MR. ANDRADE: Good morning, my name is Rafael Andrade and I represent Mr. Francisco Nueci Peña.

Trial Transcript of June 11, 2010, p. 12, lines 12-15.

CIVIL 14-1480CCC                                    9
Related Cr. 07-0088-01(CCC)

From page 12, line 6 to page 74, the record reflects the proceedings that took place in open court.  Potential jurors were asked questions during the general voir dire in open court, such as, the relationship, if any, to the attorneys and potential witnesses, the potential jurors' knowledge about the case, if any, personal or family reasons regarding drug cases.  Page 74 reflects the names of the regular and the alternate jurors.  Upon concluding the session, the jury was told:

> THE COURT: Members of the jury, we will continue this case on Monday at 10:00 a.m., the same courtroom.

Trial Transcript of June 11, 2010, p. 74, lines 24-25.

The entire jury panel was given preliminary instructions in open court. The transcript reflects that general questions were posed to the entire jury venue.  The transcript also reflects that the Court called the parties to sidebar:

> *The attorneys will approach for potential witnesses.  (Whereupon the following proceedings took place at sidebar:)
>
> MR. MARTIN: (Handing.)
>
> THE COURT: The Government has handed a witnesses list.  Does the Defendant expect to present witnesses that he could identify at this time, for the only purpose that if there is someone who is selected as a juror who later has some relationship with the witness that can cause difficulty?
>
> MR. ANDRADE: We anticipate no witnesses, Judge.
>
> THE COURT: All right.  Thank you. I will read this witness list.
>
> (The following proceedings were had in open court in the presence of the jury).

Trial Transcript of June 11, 2010, at pp. 17-18.

Clearly the first sidebar held during voir dire was for the sole purpose of receiving the witness list so that the Court could read the names of the

CIVIL 14-1480CCC                          10
Related Cr. 07-0088-01(CCC)

witnesses to the potential jurors.   The reading of the witnesses' names was done in open court and in the presence of Petitioner.

Upon discussing the situation of jurors who had members of his/her immediate family serving as law enforcement officers, juror 67 asked to approach (Trial transcript of June 11, 2010, at p. 24).  A second sidebar was held:

*(Bench conference with Juror 67:)

THE COURT: Good afternoon. Your name please?

THE JUROR: Carmen Orta.

THE COURT: What did you want to tell us?

THE JUROR:  I wanted to tell you that my ex-husband and my son–

THE COURT: What?

THE JUROR: My husband and son, they work for the FBI; my ex-husband used to be the supervisor.[3]

Trial Transcript of June 11, 2010, at pp. 38-40.

The sidebar discussion continued once the juror was excused.  The record reflects that what transpired afterwards at sidebar was a discussion with the government and defense attorney as to the hardship claim raised by different jurors, such as vacations, trainings and medical appointments.

A reading of the trial transcript of the general voir dire reflects sidebar conferences with jurors related to proficiency in the English language or possible bias either because they had been victims of crime or had a family member who had been, or had family members  in law enforcement.  Defense

---

[3]The trial transcript reflects that during the side bar exchange with juror 67, counsel for Nueci-Peña was present.

CIVIL 14-1480CCC                    11
Related Cr. 07-0088-01(CCC)

counsel was present at all times and allowed to directly ask questions to the jurors.  The courtroom was also open to the public at all times and Nueci-Peña was present in the courtroom and assisted by counsel.

A criminal defendant has a constitutional right to be present at "all stages of the trial where his absence might frustrate the fairness of the proceedings" United States v. Hernandez-Hernandez, 652 F.3d 56, 65 (1st Cir. 2011) (quoting Faretta v. California, 422 U.S. 806, 819 n. 15 (1975).  Federal Rule of Criminal Procedure 43 further provides that a defendant must be present at "every trial stage, including jury impanelment and the return of the verdict," Fed. R. Crim. P. 43(a)(2), except at stages where "the proceeding involves only a conference or hearing on a question of law."  Fed. R. Crim. P. 43(b)(3).

Nueci-Peña's absence from the bench conferences did not deprive him of any constitutional right.  It did not detract from his defense or in any way affect the fairness of his trial (see United States v. Gagnon, 470 U.S. 522, 526 (1985) explaining that due process concerns are implicated "whenever the defendant's presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge . . . and to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only").

The First Circuit Court in United States v. Collazo-Aponte, 216 F.3d 163, 182 (1st Cir. 2000), determined there was no Rule 43 violation where the defendant was "restricted from full participation in a limited number of sidebar conferences that occurred during voir dire but otherwise was present at, and fully participated in his trial."  Such is the case of Petitioner.

The record in this case supports the fact that jury selection proceedings were at all time held in open court and in the presence of defendant.

CIVIL 14-1480CCC                    12
Related Cr. 07-0088-01(CCC)

Nueci-Peña's counsel participated actively in sidebar discussion which mostly addressed issues of law.  The trial transcript clearly reflects that the sidebars were a routine occurrence of the voir dire process or had to do with evidentiary matters.

A review of the entire trial transcript establishes, without a doubt, that proceedings were held from day one, when the jury was selected, until the return of the verdict, in the courtroom, and that at no time was the courtroom sealed.

Nueci-Peña also alleges that the Court held an in-chambers conference regarding an incident with a juror.  Both the prosecutor in charge of the case and Mr. Nueci's attorney were present during that conference.  He claims that his absence at that conference regarding the juror's incident violated his Sixth Amendment right to a public trial.  In his Motion Under 28 U.S.C. Section 2255 filed on June 18, 2013, Mr. Nueci-Peña also contends that the Court allowed a contaminated juror to continue to serve in his trial.

A review of the June 21, 2010 trial record reflects that when the afternoon session began, A.U.S.A. Justin Martin informed that while he was coming back from lunch, one of the jurors was in the hall and came up to him and said: "why didn't you ask the defendant how many times he's done this before?"  At that point in time, defendant Nueci-Peña was testifying on cross examination by Mr. Martin.  This led to a detailed inquiry as to the juror who asked that question and, subsequently, of the other eleven regular jurors and the alternates.  When questioned about the statement, the particular juror answered: "I asked him why he don't ask him how many times he do the things."  Initially Mr. Nueci-Peña's defense attorney understood that there was

CIVIL 14-1480CCC                    13
Related Cr. 07-0088-01(CCC)

no need to inquire anything of this juror while the government requested an inquiry. However, after listening to the juror who approached A.U.S.A. Martin and some of the other jurors, Mr. Andrade stated that he wished to listen to all of the jurors' answers before taking a position on whether the assurances given by the jurors questioned regarding their impartiality were sufficient to continue with the case. Upon conclusion of the inquiry as to all jurors, both the prosecutor and the defense attorney informed that they were satisfied that each of the jurors who had been questioned were capable of serving as impartial jurors, notwithstanding that one juror's misconduct. The juror who approached the prosecutor was discharged from further jury duty in this case upon conclusion of her inquiry. She was substituted by an alternate juror.

The prosecutor informed at that point that he would not conduct further examination of Mr. Nueci-Peña. Defense attorney commenced its re-direct examination of defendant. The last statement made by Mr. Nueci-Pena before the jury was that he knew he was carrying contraband but did not know he was carrying drugs.

In United States v Gagnon, 470 U.S. 522, 526-28 (1985), the Court discussed the right of a defendant to be present at a proceeding both in the context of the Confrontation Clause of the Sixth Amendment and the Due Process Clause as well as under Fed. R. Crim. P. 43. This was done in the specific situation of the absence of the defendant from an in-camera discussion on the subject of defendant Gagnon sketching portraits of the jury, a matter informed by one of the jurors to the bailiff. Citing Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 105-106 (1934), where the Court observed that a defendant has a due process right to be present at a

CIVIL 14-1480CCC                    14
Related Cr. 07-0088-01(CCC)

proceeding "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge," the Court found that the presence of the defendant at the in-camera discussion held on the sketching incident was not required to ensure fundamental fairness or a reasonable substantial opportunity to defend against the charge. Specifically, the Court found that not every occurrence that a judge inquires into requires presence of the parties. The Court's analysis on the violation of Rule 43 was that a defendant does not have to be expressly warned of rights under Rule 43, that the defendants did not assert any Rule 43 rights at the time that the Court announced it would be holding a conference in chambers nor did they request to attend such conference. In sum, given these circumstances, the Court found that a defendant's failure to assert whatever  right he may have under Rule 43 constituted a waiver of such right.

Like in United States v. Brown, 669 F.3d 10, 32 (1st Cir. 2012), the situation before us had nothing to do with the defendant or the crimes he was charged with but, rather, with protecting the integrity of the proceedings. Given the approach by one of the jurors to ask the prosecutor during the lunch recess why he had not inquired of defendant how many times he had done this before, the conference was held with all counsel present to inquire of that particular juror what she had actually said. She was subsequently discharged because of her biased statements and all remaining jurors were questioned as to what, if anything, they had heard this juror comment about the case or the defendant. Mr. Nueci-Pena's right to a fair and impartial jury was protected by holding this in-camera inquiry where his attorney was present and allowed to ask any questions that he wished of the jurors. None of the Sixth Amendment

CIVIL 14-1480CCC                    15
Related Cr. 07-0088-01(CCC)

considerations related to a public trial were involved in this inquiry.  Neither the Sixth nor the Fifth Amendment were violated by holding an inquiry that led to a biased juror being excused.

Regarding defendant Nueci-Pena's Rule 43 argument, again as in the Brown case, neither defendant nor his attorney requested that he be present for the in-chambers conference although, after the prosecutor informed the juror's improper comments, the undersigned announced in open court that a conference would be held in chambers.  The undersigned said in open court: "I will first meet with the attorneys and then with the jurors in chambers." Transcript of June 21, 2010 trial session, pp.78.  Defendant neither requested to be present at the conference at any time nor raised any objections to holding the conference before or after it was held.  Although raising on appeal a constitutional violation due to absence from the inquiry into the juror's misconduct would be untimely, the fact is that not even then was the issue raised.  As explained by the First Circuit in Brown, at pp. 32-33, citing Gagnon at 529, "[i]f a defendant is entitled under Rule 43 to attend a portion of the trial not taking place in open court, then 'the defendant or his counsel must assert that right at the time; they may not claim it for the first time on appeal from a sentence entered on a jury's verdict of "guilty."'"

Petitioner's final statement on the matter of non public trial is a one line sentence claiming that his sister was not allowed in the courtroom during his trial.  He provides no information on this alleged event, such as date, time or circumstances related to the occurrence.  The Court has reviewed the trial record and finds no indication that the alleged event even occurred.

CIVIL 14-1480CCC                    16
Related Cr. 07-0088-01(CCC)

Petitioner's first allegation of ineffective assistance of counsel is meritless and contrary to the record.   The record in this case is clear. Nueci-Peña had a fair and a public trial, was present at all times and the instances of sidebar discussions pertained to matters of law during which his legal representative fully participated.   Nueci-Peña cannot validly claim ineffective assistance of counsel for failure to protect a right that was not transgressed.   As such, Petitioner's first claim of ineffective assistance of counsel is DENIED.

**C.     Ineffective Assistance of Counsel - Defense counsel was ineffective for failing to properly advise Petitioner to accept the offered plea agreement**.

Nueci-Peña's second allegation of ineffective assistance of counsel is related to his non acceptance of a plea offer.   Petitioner concedes that his counsel communicated to him a plea offer tendered by the government. However, he avers that upon advise from his counsel he rejected the offer and proceeded to trial.   Once convicted, he now claims his counsel was ineffective in the advice given and as a result of this he received a harsher sentence.

It is a well settled principle that defendants have a Sixth Amendment right to counsel, a right that extends to the plea bargaining process.   Lafler v. Cooper, 132 S.Ct. 1376 (2012), citing Missouri v. Frye, 132 S.Ct. 1399 (2012). The Supreme Court has made it clear that "during plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" Lafler, 132 S.Ct. at 1384; citing, McMann v. Richardson, 397 U.S. 759, 771 (1970).

CIVIL 14-1480CCC                    17
Related Cr. 07-0088-01(CCC)

In Hill v. Lockhart, 474 U.S. 52 (1985), the Court held that "the two part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill, 474 U.S. at 57.

Therefore, pursuant to the Strickland test petitioner must first establish that his counsel in plea negotiations and in providing assessment on the offer did so in such a way that taking into account all the circumstances and facts known to counsel at that time, his advise and recommendation was "outside the wide range of professionally competent assistance." Tejeda v. Dubois, 142 F.3d 18, 22 (1st Cir. 1998). Petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Campuzano v. United States, 976 F.Supp. 2d 89, 98 (D.P.R. 2013) (citing Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996); quoting Strickland v. Washington, 466 U.S. at 689).

The second element of the Strickland test "also presents a high hurdle. 'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" Campuzano, 976 F.Supp. at 89 (quoting Argencourt v. United States, 78 F.3d. 14, 16 (1st Cir. 1996). Petitioner has failed to meet the Strickland test. He has failed to present any evidence that would allow this Court to even consider his claim based on Strickland standards of ineffective assistance of counsel. Mere assertions without further support are not enough.

There is no evidence on the record that would establish or even hint at that Nueci-Peña's counsel rendered him wrong advise during the discussion

CIVIL 14-1480CCC                           18
Related Cr. 07-0088-01(CCC)

of the plea offer.  Petitioner has provided no evidence nor has he reference

any event on the record that would even remotely support his allegation.

In fact, a review of the minutes of the first day of trial indicate that

defense counsel were given a recess in order to discuss the possibility of a

plea.  After the recess, counsel for Nueci-Peña informed that his client would

proceed to trial (d.e. 394 in Cr. 07-0088CCC).

In order for a defendant to plead guilty he must comply with one

fundamental principle:  acceptance of responsibility for the crime which he is

pleading guilty to.   Petitioner has never stated that he knew he was

transporting narcotics in the vessel which he himself said he was the captain

of.  Even in his memorandum in support of his § 2255 Petition, Nueci-Peña

maintains that he had no knowledge (d.e. 1-1 at p. 12).  It is a well settled

principle that any defendant that wishes to plead guilty pursuant to a plea

agreement entered into with the government must accept his guilt and accept

responsibility for the crimes charged against him.  See United States v. Deppe,

509 F.3d 54 (Mass. 2007).

At Petitioner's Sentencing Hearing he exercised his right to address the

Court:

> The Defendant: Well, I want to say that at no time did I conspire to
> bring drugs to the United States.  I never had drugs in the U.S.
> territory, nor do I have any connections to be able to bring drugs
> to the United States.
>
> Therefore, the sentence that you will impose on me, I will appeal
> it however times I have to do so.
>
> I have no connection whatsoever with the United States, nor did I
> conspire to do this, nor was I in the jurisdiction of the United
> States.  (Sentencing Hearing Transcript of September 29, 2010,
> at p. 8).

CIVIL 14-1480CCC                    19
Related Cr. 07-0088-01(CCC)

"A defense attorney in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable." Boria v. Keane, 99 F.3d 492, 496 (2d Cir. 1996), as cited in United States v. Gonzalez-Vazquez, 219 F.3d 37, 42 (1st Cir. 2000). However, the decision to plead guilty must ultimately be left to a client's wishes. Boria v. Keane, 99 F.3d at 496-497. There is no doubt that Petitioner's attorney informed him of a plea offer. The record reflects that Nueci-Peña until the time of sentencing denied any criminal wrongdoing and has reiterated his lack of knowledge of the presence of narcotics on board the vessel. This was his last statement during his testimony before the jury.

The Court concludes that Nueci-Peña was advised of the plea offer. He decided to reject it and exercised his constitutional right to a trial. Petitioner's second allegation of ineffective assistance of counsel is DENIED.

**D.    Sentencing Court Error - the sentencing court erred in increasing the mandatory minimum in violation of Petitioner's Sixth Amendment Right**.

Nueci-Peña's final claim is one of sentencing court error. Petitioner alleges that the Court erred in increasing his mandatory minimum. In voicing Alleyne v. United States,133 S.Ct. 2151 (2013), he claims that the Court increased his sentence beyond the mandatory minimum without submitting relevant facts of enhancement to the jury (d.e. 1-1 at p. 14). Petitioner is again mistaken.

Alleyne instructs that a defendant's Sixth Amendment right to a trial by jury requires that "facts that increase mandatory minimum sentences must be submitted to the jury." Id. at 2163. Alleyne is just as clear in stating what the

CIVIL 14-1480CCC                    20
Related Cr. 07-0088-01(CCC)

Sixth Amendment does not require, "Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury.  We have long recognized that broad sentencing discretion, informed by judicial fact finding, does not violate the Sixth Amendment."  Id.

"In other words, factual findings made for purposes of applying the Guidelines, which influence the sentencing judge's discretion in imposing advisory Guidelines sentence and do not result in imposition of a mandatory minimum sentence, do not violate the rule in Alleyne."  United States v. Ramirez-Negron, 751 F.3d 42, 48 (1st Cir. 2014).

In this case the Court made factual findings for the purpose of applying the Guidelines (Sentencing Hearing Transcript of September 29, 2010, at pp. 13-14).  The Court for the record state the guideline enhancement and the basis for them.  There was no Alleyne violation.

For the reasons previously stated, Petitioner's claim of sentencing error is DENIED.

### E.   **Evidentiary Hearing**.

Petitioner claims that he is entitled to an evidentiary hearing. The fact is that in this case he has failed to raise any cognizable issue under § 2255. Evidentiary hearings in § 2255 cases are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted.   Moreno-Morales v. United Sates, 334 F.3d 140 (1st Cir. 2003).  An evidentiary hearing "is not necessary when a § 2255 petition is inadequate on its face, or although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case."  United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978).

CIVIL 14-1480CCC                    21
Related Cr. 07-0088-01(CCC)

Such is the case of Nueci-Peña's § 2255 petition; it is simply unsupported by the facts and evidence on the record in this case.

**III.    CONCLUSION**

For the reasons stated, the Court concludes that Petitioner Francisco Nueci-Peña's federal habeas relief is DENIED.   Furthermore, Petitioner's request for evidentiary hearing is also DENIED.

SO ORDERED.

At San Juan, Puerto Rico, on August 16, 2016.


S/CARMEN CONSUELO CEREZO
United States District Judge